Heard at Charleston, February, 1824
Chancellor Desaussure.
The complainants right to a partition rests solely on the devise of an undivided third part of the lauds to Thomas Elliott, his grand father. The will of 'William Elliott, of Berkley, is dated 15th June, 1728, and -devise as follows; — “I give, devise and bequeath to my three sons, William Elliott, Thomas Elliott <and Joseph Elliott, all that my plantation or .tract of land on Charleston Neck, containing 15;|- acres; I also give and bequeath to my said three sons, William. Thomas and Joseph, £10,000, current money of the province, to bayo and to hoüí! 111? Said 15§ acres of land and the said sum of £10,000, unto my said three sons William Elliott, Thomas Elliott, and Joseph Elliott, their heirs, executors, administrators and assigns, for ever.” On the lace of the will, there can be no -doubt that an individual third part of the land vested in Thomas Elliott and by his will passed to his de-.visees, under whom the complainant claims,
But it is alledged that there was a secret trust in favor of the general Baptists; and the defendants claim the reversion as *282 Sieirs of the donor, on the extinction of the Society. Evidence has been read to prove a trust and the possession of the general Baptists. The defendant? also rely on their own possession since 1796, to 1808, when the bill was died, on the statute of limitations and the length of time.' These grounds will be considered in their order.
The first question is, whether the trust on which the defendants rely is not within the statute of frauds, and if so,, whether parol evidence is admissible to prove it? — And I am of opinion on this ground that the trust is within the statute. The case of Adlington vs. Caun, 3 Atk. 143, is so similar in circumstances as to be a direct authority on the point, and if the case depends ed merely on this question, I should follow without hesitation the judgment of Lord Hardwiche in rejcctingparol evidence of the trust.
But it appears that an information was filed some years after the testator’s death, by Sir James Wright, attorney general of the province, against William Elliott, of Accabee, and the executors of Thomas and Joseph Elliott, the other devisees, that the cause was referred to arbitration and the reference made a rule of court, that the arbitrators made their award directing a conveyance to be executed; and there is the strongest presumption that Wm, Elliott did, in compliance with the award, execute a conveyance in the year 1749. For although the original deed is not produced, the release of Sir James Wright grounded wholly on such conveyance, the entries in the Register’s book and the marks of authenticity on the ancient paper which is produced aS a copy, satisfy my mind of its existence. It seems from the case of Adlington vs. Caun, as well as Muckleston vs. Brown, 6 Ves. 52, and Paine and Hall, 18. Ves. 475, that it the trustee will confess the trust by his' answer, that will take it out of the statute of frauds. The declaration of trust therefore must be considered good as to the part of William Elliott; but the question still remains, whether there is any declaration of trust as to the part of Thomas Elliott, the complainants ancestor. I do not think that the deed of William Elliott or his answer, could take out of the operation of the staiu:e of frauds any thing *283 more than his own part; and if it were a recent transaction, I should hold that the devisees of Thomas Elliott might keep for themselves one third of the land, notwithstanding the declaration -ef William Elliott and his conveyance.
This leads us to the consideration of the next ground, vis: the length of time. And in this view, the case differs widely, from Adlingtea vs. Caun. In that case, the bill was died by the heir at law to compel a discovery, in order to defeat the trust and prevent the execution of it, as within the statute of Mort-main. .The will of Lawrence Hollister on which that case •arose, and William Elliott’s will, which is now before us, were executed in the same year, and within a few weeks of the same day, and it Is probable that the same “horror of the Mortmain •act” of which Lord Hardwicke speaks, led them both to adopt the same contrivance of a secret trust.* In both cases they adopted the form of a joint devise; and it is a little singular that each of them acted under a groundless apprehension; for the will of Lawrence r Hollister, which he revoked In order to effect the same object by a secret trust, would' have stood, as if it was made before the statute of Mortmain; and the devise of Wil.iam Elliott would have been good if he had expressed the trust in the Will; because the statute of Mort-main was never extended to this country: but here the resemblance between the two cases ends. The devisors in Adlingtoi, vs. Caun, pleaded the statute of frauds to maintain their possession and keep the estate to themselves! but here, one of the de-visees, after a very long acquiescence, relies on the statute of frauds to get back the estate from those into whose hands it has passed, by the execution of the trust manifested in various ways, .Now although it would be against the statute to admit parol evidence to establish a trust of lands, yet it is a distinct question whether-a confirmation or acquiescence by the devisees or heirs of Thomas Elliott may not and ought not to be presumed from the great length of time. The executors of Thomas Elliott were parties to the information filed by Sir Joseph Wright; and although the conveyance was executed in pursuance of an award, instead of a decree. Yet this award, if not a dircc* *284 judgment of* the court on the point, was at least referred to by the subsequent orders that were made in this cause as a good and valid act. At this distance of time, every presumption is-to be made in favor of the proceedings of the court, that every thing was done regularly. The acquiescence of the parties for about sixty years, without a single step against it,- strengthens this presumption — is equal to a confirmation, and renders the conveyance of William Elliott a valid declaration of trust/
If length of time however could not give validity to this conveyance, by raising a presumption that the parties have confirmed the act of William Elliott, or that they were bound by the decree of the court, it would be necessary to consider the effect of the statute of limitations: (It was my desire- to. have directed an issue at law to try whether the possession in this case was adverse; bat the council on both sides wished this court to decide at once on the case — I now therefore proceed to discuss it:) .And here it was contended that the statute will not run in favor of the defendants, because they cannot connect their pos» session with the possession of the Baptists, and because they are tenants in common with the plaintiffs. But the Baptists held under the deed of William Elliott, and by that deed, the reversion was in the defendants. The estate was one; the reversion was connected with the particular estate; and the possession of the revisioner is not to be separated from the possession of those who enjoyed the preceding estate. The other objection is, that the statute will not run in favor of one tenant in common against his companions. These objections have great weight, but tin; distinction is between that which is positive and that which is presumptive.
An ad vers* possession will bar in any case; and when the party in possession holds, by a title in opposition to the title of plaintiff, the possession is adverse, o f course. A tenant in common holds by a title consistent with the title' of his companions, and the possession of such a person is not necessarily adverse. But if a person lias taken open possession, enclosed and improved at his own expense, and received and appropriated to his own use the rents for many yeu.vs, without any acknowledgment of *285 bis ¿ómpanions’ claims, which have never been asserte'd, it is a good ground to presume that bis possession was adverse. An actual ouster need not be proved-, it will be presumed, after long possession. This is the doctrine of Lord Mansfield in Doe, vs. Preeper, Cow. 217, and is not to be overturned. I am therefore against the plaintiff on the statute of limitations; the possession of the defendant from 1796 to 180,8 having been fully proved, and no claim set up by complainant, who resided in the same house till 1808.
Another view of the subject remains to be taken. It has been argued that even if it be admitted that there was a secret trust for the Baptists, there is a resulting trust in favor of the three sons of William Elliott, of Berkley; because the estate íá devised to them subject to the claim of the Baptists, under the secret trust; and that as the society has become extinct, the cá-tate reverts to' their heirs, and not the heirs of the testator. But I take the rule to he, that where there is a trust, though a secret one, and even if the trust be so expressed as to fail of its object altogether, the heir at law, and not the trustee will take, (Bishop of Cloyne, vs. Young, 2 Ves. 91; Lord Guilford, vs. Pierdon, 2 Ves. 495; Morriu, vs. Bishop of Durham, 9 Ves. 399.)
In this case, the Lord Chancellor says, “the object of the trust, being too indefinite, has failed; the consequence is that trustee took the propertyin trust to dispose of it as the law will dispose of it, and not for his own benefit.” And so .is the rule as to personality, 1 Ves. 475, 1 Bro. Ch. Cas. 201. This argument supposes that there was s, trust, and when we have got so far as to concede that, we must admit a resulting trust in favor of the heirs at law of the testator, And as the estate of the Baptists terminated before the abolition of the rights of primogeniture, the reversion vested in Mrs. Morris and Mrs. Huger, <ke heirs ofWm. Elliott, of Berkley.
Another argument was insisted on, viz: that the defendants were trustees for the devisees of Thomas Elliott, and a paper signed by William Elliott, of Accabee, and dated in 1739, in which he acknowledges having received one third of the lands in' question, as one of the executors of Thomas Elliott, *286 ^‘for the orphans part,” is produced for that purpose.
But I cannot admit that William Elliott of Accabee was d trustee for Thomas Elliott’s devisees, in the proper sense of the •term. The estate of Thomas Elliott was not vested in him, and at all events, the conveyance of 1749, of the legal estate which had been vested in him, would have destroyed the trust. Prom the best consideration of the subject-, oh the grounds that this was a trust which has been performed, and which the -.plaintiff’s ancestors by their long acquiescence have confirmed, and on the statute of limitations, my opinion is that the com» plainant is not entitled to recover.
It is therefore ordered and decreed that the bill be dismiss» ed with costs.
The complainant appealed on the several grounds involved in the decree of the cureuit court.
In the Court of Appeals, Charleston, March, 1824.
Chancellor Sesaussure.- — We have considered the case •with the attention which its difficulty and importance required. It involves questions of much nicety, and we have beén long in .coming to a conclusion entirely satisfactory to ourselves; but upon a full examination of the circuit court decree, we dp not perceive that we can come to any other conclusion than has been' done in that decree.
The great lapse of time which has taken place since the proceedings on which the title depends, we consider conclusive, independently of the others, which are in themselves very strong.
It is therefore ordered and adjudged that the decree of the circuit court be affirmed.
Chancellors Waites and James, concurred.